UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

HENRY LEE ROBERSON, JR.,

       Petitioner,

v.                                  Case No.  4:17cv500-RH-CJK

MARK S. INCH,
Secretary, Florida Department of Corrections,[1]

       Respondent.

_____/

<u>ORDER and</u>
<u>REPORT AND RECOMMENDATION</u>

      Henry Lee Roberson, Jr. has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1).  Respondent ("the State") answered, providing relevant portions of the state court record.  (Doc. 19).  Roberson replied.  (Doc. 21).  The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Roberson is not entitled to habeas relief.

---

[1]Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  *See* Fed. R. Civ. P. 25(d).

## BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

On October 15, 2011, Roberson drove himself and his two cousins, Jamie Hampton and Jerry Miller, to a bar in Monticello, Florida.  They had a few drinks and, just after 2:00 a.m., got back in the car to drive home to Greenville, Florida. Roberson drove; Hampton rode in the front passenger seat; and Miller rode in the back seat behind Hampton.  As Roberson drove east-southeast along U.S. Highway 90 (a two-lane highway), he accelerated up to 130 miles per hour in a 60-mph zone until, suddenly, he lost control of the vehicle.  Roberson deviated onto the shoulder, corrected too sharply, and sent the vehicle into a spin.  The vehicle spun sideways, swerved across both lanes and the opposite shoulder of the highway, left the highway, tumbled through a field, hit a telephone junction box and three trees, and crashed into the tree line.

Madison County Sheriff's Deputy Odell Livingston, Jr., a cousin of all three men, was the first to respond to the scene.  Livingston identified the crashed vehicle as Roberson's vehicle, not because Roberson owned it but because Roberson was the only person Livingston ever saw drive it, save once.  Livingston found Jerry

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State.  (Doc. 19, Exs. D-E (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

Miller dead in the back seat, still buckled into his seatbelt. Roberson and Hampton were no longer in the vehicle. Jamie Hampton identified Roberson as the driver.

Later, at the hospital, Roberson admitted to Florida State Trooper Scotty Lolley that he was driving the vehicle when it crashed. Roberson described the crash, denied speeding, and attributed his loss of control to a failed or blown tire. Roberson also admitted to Lolley that he was at a bar just prior to the crash, but denied consuming alcohol. Forensic and physical evidence refuted Roberson's denial of speeding, his tire-failure theory, and his denial of alcohol consumption. Roberson's blood alcohol content was 0.224 grams of ethyl alcohol per 100 milliliters of blood,[3] almost three times over the legal limit in Florida. Jamie Hampton's blood was recovered from both the driver's and passenger's-side airbags. Roberson's blood was nowhere in the vehicle.

Roberson was charged in Madison County Circuit Court Case No. 2011-CF-318, with Driving Under the Influence Manslaughter. (Doc. 19, Ex. A, p. 13).[4] Roberson went to trial on February 21, 2013, and the jury found him guilty as charged. (Ex. A, p. 55 (written verdict); Ex. E, pp. 548-49 (reading of verdict and

_____

[3] Roberson's blood was drawn at 4:50 a.m., roughly two hours after the crash. Roberson was in the hospital during those two hours.

[4] Roberson was originally charged with DUI Manslaughter and DUI Serious Bodily Injury, but the State amended the information and proceeded only on the DUI Manslaughter charge.

polling of jury)).  The trial court sentenced Roberson to 10 years and 3 months in prison followed by 4 years and 9 months on probation.  (Ex. A, pp. 88-101 (judgment and order of probation)).  The Florida First District Court of Appeal ("First DCA") affirmed on July 23, 2014, per curiam and without written opinion.  *Roberson v. State*, 147 So. 3d 988 (Fla. 1st DCA 2014) (Table) (copy at Ex. J).

On September 30, 2014, Roberson filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. K, pp. 23-33).  The state circuit denied relief (Ex. K, pp. 40-42), and the First DCA affirmed per curiam without written opinion.  *Roberson v. State*, 156 So. 3d 1083 (Fla. 1st DCA 2015) (Table) (copy at Ex. N).  The mandate issued February 24, 2015.  (Ex. N).

On March 24, 2015, Roberson filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended.  (Ex. O, pp. 1-67 (original motion), pp. 89-107 (amended motion)).  The state circuit court granted an evidentiary hearing and appointed postconviction counsel.  (Ex. O, pp. 139-43).  After hearing, the circuit court denied relief by written order.  (Ex. O, pp. 146-90 (order); Ex. O, pp. 191-255 (evidentiary hearing transcript)).  The First DCA affirmed per curiam without written opinion.  *Roberson v. State*, 228 So. 3d 558 (Fla. 1st DCA 2017) (Table) (copy at Ex. R).  The mandate issued October 17, 2017.  (Ex. T).

Roberson filed his *pro se* federal habeas petition on October 27, 2017, raising three claims of ineffective assistance of trial counsel.  (Doc. 1).  The State concedes that each claim is exhausted, but argues federal habeas should be denied because Roberson fails to meet § 2254(d)'s demanding standard.  (Doc. 19, pp. 14-24).

RELEVANT LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5]  Justice O'Connor described the appropriate test:

---

[5]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme

---

II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). The Supreme Court described the "unreasonable application" standard this way:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86 (2011)). The § 2254(d) standard "is difficult to meet . . . because it was meant to be." *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court follows a two-part test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (*quoting Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)). "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable

probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

DISCUSSION

<u>Ground One</u>        "Mr. Roberson Was Denied His Right To Effective Assistance Of Counsel Under The Sixth Amendment To The United States Constitution When Trial Counsel Advised Him Not To Testify At Trial."  (Doc. 1, p. 3).

Roberson explained at his Rule 3.850 evidentiary hearing what he would have said had he testified at trial:

> I would have testified to that I was not the driver of the vehicle.  I would testify to that I was not the driver of the vehicle that crashed killing Jerry Miller.  I gave a false confession at the time because my grandma – the car was in my grandmother's name, that's why I gave the false confession.
>
> . . . .
>
> And like I say, it was, like, her car and I was protecting my grandmother as far as, like, the insurance on the car.  I didn't know anyone had died so that's why the false confession was made.

(Ex. O, pp. 194, 197).  Roberson claims he ultimately chose not to testify because his trial counsel, Mr. Brant Hargrove, advised him "his testimony was not needed, and would be rejected as untruthful because of his false confession, and would not raise reasonable doubt of guilt."  (Doc. 1, p. 4).  Roberson argues counsel's advice was unreasonable because it "permitted Defendant's un-contradicted and un-rebutted confession to Troopers he was the driver in the fatal crash; and Jamie Hampton's self motivated testimony he [Roberson] was the driver to stand uncontested."  (*Id*.).  Roberson claims that had the jury heard his proposed testimony

repudiating his confession, and considered that testimony in conjunction with the DNA evidence establishing only Hampton's blood on the airbags, there is a reasonable probability its verdict would have been different. (*Id.*, pp. 4-5).

The parties agree that Roberson exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding. (Doc. 1, pp. 5-6; Doc. 19, p. 14). The state circuit court held an evidentiary hearing and denied relief by written order. The order correctly identified *Strickland* as the controlling legal standard (Ex. O, pp. 147-48), and denied relief for these reasons:

> The Defendant alleges that counsel's advice to the Defendant not to testify in trial was unreasonable. *Motion at 5*. The Defendant argues that his testimony would not have been prejudicial because the Defendant had no criminal history. *Motion at 5*. The Defendant further argues that his testimony was necessary to explain his "false confession" that he was the actual driver of the car that resulted in the accident and death of another. *Motion at 5-6*; *Evidentiary Hearing transcript at 4, 7, 15-16, 20-21*. The Defendant concludes that his counsel's defense was incomplete without the testimony that the Defendant could have provided that he was not the actual driver, a fact that the Defendant argues was at issue in this case. *Motion at 6-8*.

> The Defendant's counsel provided extensive and competent testimony in the evidentiary hearing regarding the choice not to call the Defendant to testify at trial. First, counsel provided that the Defendant's testimony was not necessary to support his theory of defense. *Evidentiary Hearing transcript at 24-34 (specifically page 29)*. Although the Defendant wanted to testify that he was not the actual driver, this testimony would not have been true. The Defendant decided that he would testify that he was not the driver because there were minimal amounts of the Defendant's blood DNA on the steering wheel, and because DNA of the passenger was also found on the steering

wheel. *Evidentiary Hearing transcript at 24-34*. However, the Defendant specifically told his counsel that the Defendant was in fact the driver of the car. *Evidentiary Hearing transcript at 24-29, 32, 34-35, 43-45*.

Most importantly, defense counsel discussed the option of testifying with the Defendant, and ultimately, the Defendant chose not to testify. *Evidentiary Hearing transcript at 27-28*. Counsel did advise the Defendant not to testify, but that was based on the fact that defense counsel did not feel any need for the Defendant to testify. *Evidentiary Hearing transcript at 28*. And, counsel risked allowing the Defendant to testify that the Defendant was not the driver, when counsel in fact knew that the Defendant was the driver based upon the Defendant's own admission to counsel. *Evidentiary Hearing transcript at 24-29, 32, 34-35, 43-45*. Because counsel specifically advised the Defendant of his right to testify, and the Defendant indicated to his counsel that the Defendant did not wish to testify, and because not testifying was advantageous according to defense counsel's trial strategy, the Defendant's claim that counsel was ineffective as to his advice regarding testifying in trial is without legal merit and must be denied.

(Ex. O, pp. 148-49) (paragraph numbers omitted)).  After addressing Roberson's remaining claims, the circuit court concluded:

## **Conclusion**

As a final note, each of the Defendant's claims essentially revolves around the issue of whether or not the Defendant was the driver.  The Defendant claims he should have testified at trial so that he could put on the record that he was not the driver.  The Defendant claims that he should have been present at the suppression hearing, and he should have been called to testify at that hearing so that he could testify that his confession to being the driver was false, and that he actually was not driving in the accident.  And finally, the Defendant claims that an accident reconstruction expert could have provided some type of positive testimony for the Defendant to support the Defendant's claim that he was not the driver.

Each one of the Defendant's claims fails for all of the reasons provided above, but most importantly, long after the Defendant confessed to being the driver while in the hospital and allegedly inebriated, the Defendant told his counsel that the Defendant was in fact the driver. The Defendant also made this claim to his counsel's investigator, again, long after the night the Defendant was in the hospital on drugs and alcohol. The Defendant never denied this fact to counsel. Thus, counsel's strategy was to call into doubt whether the Defendant was driving through the State's allegedly minimal evidence; but, the strategy was never to put the Defendant on the stand to testify that he was not the driver, as that would have been a false statement of fact. Based on this fact alone, each of the Defendant's claims fail, on top of all the factual and legal reasons provided above based upon the record and testimony provided in the evidentiary hearing.

(Ex. O, pp. 7-8) (paragraph numbers omitted). The First DCA affirmed without explanation. (Ex. R).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment,

federal habeas courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018).

Fairminded jurists could agree with the state court's decision.  The state court determined that Attorney Hargrove's evidentiary hearing testimony was credible; that Roberson's evidentiary hearing testimony was not credible; and that Roberson's proposed trial testimony – that he was not the driver – was false.  This court defers to the state court's factual determinations, including its credibility assessments, as Roberson has not rebutted their correctness with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" (*quoting Marshall v. Lonberger*, 459 U.S. 422, 434 (1983))).

According to Attorney Hargrove, he and Roberson reserved their discussion about Roberson testifying until after the State presented its case to the jury.  (Ex. O,

pp. 169-70).  Up until trial, Roberson had consistently maintained – to both Hargrove

and Hargrove's investigator – that he was the driver of the vehicle and that he lost

control because the left tire blew out.  (Ex. O, pp. 214-15, 218-19, 224, 231-32, 233).

Roberson's admissions to being the driver were consistent with his confession to law

enforcement.  (*Id*.; *see also* Ex. D, p. 469).  Roberson never disclosed, or gave any

inkling to Hargrove, that his trial testimony would be any different:

> Q [Postconviction counsel]  Okay.  Now, had Mr. Roberson testified,
> would – do you know what he would have testified to as far as him
> being the driver?
>
> A [Trial Counsel Hargrove]  No.
>
> Q  Okay.
>
> A  I don't.
>
> Q  All right.
>
> A  I knew what the truth was.
>
> Q  Right.
>
> A  But I don't know what he would have said.
>
> Q  Well, based off your conversations with him up until trial, what was
> his –
>
> A  He was the driver.
>
> Q  Okay.  That is what he told you?
>
> A  Yeah,  He was the driver.  The issue was could the State prove it.

Q  Right.  Okay.

A  The issue wasn't was he the driver.

Q  Okay.

A  That was never the issue.  The issue was, was there enough evidence
to prove it.

(Ex. O, pp. 218-19).  Similarly, Roberson never told Attorney Hargrove that the

confession to law enforcement was "false", as he now contends.  (*Id*., pp. 224, 225,

234-35).

Given Roberson's admissions, Attorney Hargrove developed this defense

strategy:

The critical issue in the case was could the State prove it [that Roberson
was the driver] because there was never an issue as to who was really
driving the car.  Because his statements, not just to me at the jail and
every other time we talked, but to my investigator was, Yeah, I was
driving, but.

So to me, I mean, I wasn't going to suborn perjury, I wasn't going
to try to put on a case that had to be manufactured, but I was going to
put on a case where I could at least make some arguments that mitigated
his involvement to whatever degree, so.

(Ex. O, pp. 231-23).  At trial, the State presented Roberson's confession that he was

the driver, and Jamie Hampton's testimony that Roberson drove him and Jerry Miller

both to and from the bar that evening.  (Ex. D, pp. 342-60).  To maintain credibility

with the jury, the State also presented the results of its DNA testing of the airbags,

which revealed Jamie Hampton's blood on the driver's and passenger's-side airbags

and the absence of Roberson's blood.  (Ex. D, pp. 419-26).  Hargrove knew, though,

that the reason Roberson left no blood inside the vehicle was because he was ejected.

(*See* Ex. O, pp. 216-17, 223, 225, 232).

> After the State rested, Hargrove and Roberson conferred about Roberson
>
> testifying.  According to Hargrove:

> > [T]he conversation was – this is me talking to him, that typically
> > a defendant does not testify.  The reason that a defendant would testify
> > is if there's some part of the case that's an important part that hasn't
> > been addressed either through direct examination or through cross-
> > examination and there's some question that needs to be answered to the
> > jury, then a defendant would testify.  And I said, I don't see an
> > important piece of information lacking in your case, therefore, I don't
> > think you need to testify.  But you have the absolute right tot ignore my
> > advice and you can testify if you want and that's completely up to you.
> > I can't make that decision for you, that's yours.

(Ex. O, p. 218).  Roberson chose not to testify.  (*Id*., pp. 219-20).  Roberson did not

mention he was considering saying he was not the driver, nor did he offer any

contemporaneous explanation of his decision not to testify.  (*Id*., p. 220).

> Based on the state court's findings and the record below, fairminded jurists

can concur in the conclusion that Roberson failed to establish deficient performance

and prejudice under *Strickland*.  On the performance prong, the state court

reasonably concluded Hargrove's advice on Roberson's right to testify and

discouragement from doing so was within the bounds of reasonable professional

conduct given the information Hargrove knew at the time. This conclusion remains reasonable even if Hargrove knew Roberson intended to perjure himself. *See Nix v. Whiteside*, 475 U.S. 157, 171 (1986) ("Whether [defense counsel's] conduct is seen as a successful attempt to dissuade his client from committing the crime of perjury, or whether seen as a 'threat' to withdraw from representation and disclose the illegal scheme, [defense counsel's] representation of [his client] falls well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland*."); *see also id.* at 173 ("Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*.").

Although the state circuit court did not directly address how the falsity of Roberson's proposed testimony also doomed his claim of prejudice under *Strickland*'s second prong, the First DCA reasonably could have rejected Roberson's claim on that basis. Roberson claims his proposed (false) testimony would have caused the jury to reach a different verdict. [6] In *Whiteside*, the Supreme Court found

---

[6] Roberson argues, essentially:

> If Defendant had testified at trial that he was not the driver and that Hampton was the actual driver of the vehicle at the time of the accident coupled with Hampton's DNA and blood being found on the Driver's airbag, (DNA transfer) Defendant would have been acquitted of this crime. Therefore, there is a reasonable probability

that argument insufficient as a matter of law.  Mr. Whiteside attempted to satisfy

*Strickland*'s prejudice prong by demonstrating that the outcome of his trial would

have been different but for counsel's refusal to cooperate in presenting his false

testimony.  475 U.S. at 175-76.  The Supreme Court  held:

> We hold that, as a matter of law, counsel's conduct complained
> of here cannot establish the prejudice required for relief under the
> second strand of the *Strickland* inquiry. . . . According to *Strickland*,
> "[a] reasonable probability is a probability sufficient to undermine
> confidence in the outcome." *Ibid*.  The *Strickland* Court noted that the
> "benchmark" of an ineffective-assistance claim is the fairness of the
> adversary proceeding, and . . . in judging prejudice and the likelihood
> of a different outcome, "[a] defendant has no entitlement to the luck of
> a lawless decisionmaker." *Id*., at 695, 104 S. Ct., at 2068.

> Whether he was persuaded or compelled to desist from perjury,
> Whiteside has no valid claim that confidence in the result of his trial
> has been diminished by his desisting from the contemplated perjury.
> Even if we were to assume that the jury might have believed his perjury,
> it does not follow that Whiteside was prejudiced.

*Id*. at 175-76; *see also id*. at 186-87 (Blackmun, J., concurring in judgment) ("To the

extent that Whiteside's claim rests on the assertion that he would have been acquitted

had he been able to testify falsely, Whiteside claims a right the law simply does not

recognize. . . . Since Whiteside was deprived of neither a fair trial nor any of the

---

trial counsel's error rendered the result of the proceeding to be
unreliable.

(Doc. 1, p. 5).

specific constitutional rights designed to guarantee a fair trial, he has suffered no prejudice").

The state court's rejection of Roberson's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Roberson is not entitled to federal habeas relief on Ground One.

Ground Two      "Mr. Roberson Was Denied His Right To Effective Assistance Of Counsel Under The Sixth Amendment To The United States Constitution When Trial Counsel Failed To Adequately Move For The Suppression Of The Defendant's Confession." (Doc. 1, p. 6).

Roberson claims his confession to Trooper Lolley was involuntary because he was under the influence of alcohol and pain medication. Roberson acknowledges defense counsel moved to suppress his confession on that basis, but argues counsel failed to properly argue the motion because he "failed to obtain hospital records in support, nor did he subpoena attending physicians or other potential expert witnesses that could have testified to the effects of the drug alcohol cocktail and his injuries." (Doc. 1, p. 7; *see also* p. 8). Roberson also faults counsel for failing to notify him of the date of the suppression hearing so he could testify. Roberson alleges he was out on bond and "informed counsel he wanted to testify that he was not the actual driver of the vehicle at the time of the accident." (*Id*., pp. 7-8). Roberson argues

that had the trial court heard his testimony, it would have suppressed his confession and he would have been acquitted. (*Id.*, p. 8).

The parties agree that Roberson exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding. (Doc. 1, pp. 9-10; Doc. 19, p. 18). The state circuit court held an evidentiary hearing and denied relief by written order. After correctly identifying *Strickland* as the controlling legal standard, the court denied relief for these reasons:

> The Defendant alleges that following the accident in this case, the Defendant was injured and was transferred to the hospital. *Motion at 9.* The Defendant further alleges that while in the hospital, he was both drunk and on drugs administered by the hospital for pain, and while under the influence, gave a "false confession" telling law enforcement that the Defendant was the driver of the vehicle in the accident. *Motion at 9-10*; *Evidentiary Hearing transcript at 4-5.* The Defendant explains that he lied and stated that he was the driver of the vehicle because he did not know that anyone involved in the accident had died, and was worried that his grandmother's insurance would not cover the damage if anyone else was driving besides the Defendant. *Evidentiary Hearing transcript at 7.*
>
> First and foremost, following the Defendant's trial, the Defendant appealed, and this Court's denial order regarding the suppression of the Defendant's hospital confession was reviewed by the First District Court of Appeal. *See attached Order Denying Defendant's Motion to Suppress.* The First DCA affirmed the denial of the Defendant's motion and argument for suppression of the Defendant's confession to being the driver. As such, the doctrines of *res judicata* and collateral estoppel bar the Defendant from re-litigating this issue.

However, in an abundance of caution, the suppression issue was included in the evidentiary hearing held on the instant motion.  First, the Defendant's trial counsel's testimony provided (sic) that the Defendant was, in fact, the driver based upon the Defendant's multiple representations to counsel that the Defendant was the driver. *Evidentiary Hearing transcript at 24-29, 32, 34-35, 43-45.*  These representations meant that the Defendant could not testify that his confession was a "false confession," as the confession that the Defendant was driving was in fact the truth.

Second, the Defendant's counsel, contrary to the Defendant's claim in the instant motion, did in fact inform the Defendant of the suppression hearing that the Defendant did not ultimately choose to attend.  *Evidentiary Hearing transcript at 32, 35-36.*  The Defendant simply was not prejudiced in not being in attendance (although the Defendant made that choice on his own) as he could not have provided any additional evidence to assist in the hearing.

And third, counsel thoroughly prepared for the suppression hearing including speaking with nurses and physicians present the night of the accident, and obtaining all medical records that could assist the defense's argument that the Defendant was under the influence when he waived his <u>Miranda</u> rights and confessed to being the driver of the vehicle.  *Evidentiary Hearing transcript at 30-32*; *see also attached Evidentiary Hearing transcript at 45-47.*  Based upon the entirety of counsel's testimony in the evidentiary hearing, it is clear that defense counsel did everything he could and should have done to properly prepare for and argue the motion to suppress, which arguments were ultimately denied by this Court and affirmed on appeal.  As such, Claim B is without legal merit and must be denied.

(Ex. O, pp. 149-50) (paragraph numbers and footnotes omitted).  The First DCA affirmed without explanation.  (Ex. R).  The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 99.

Applying *Wilson*'s look-through presumption, the state court's rejection of Roberson's claim was based on a reasonable determination of the facts and a reasonable application of *Strickland*'s two-pronged standard.  Again, the state court found credible defense counsel Hargrove's evidentiary hearing testimony.  Hargrove reviewed the relevant hospital records, deposed Roberson's attending physician, and interviewed the nurse who treated Roberson around the time of Trooper Lolley's interview.  (Ex. O, pp. 220-21).  Hargrove made a tactical decision not to call the attending physician and nurse because they would have "contradicted" what the defense was arguing, namely, that Roberson "was out of it and that he could not have given consent."  (Ex. O, pp. 220-21, 227).  The only evidence arguably favorable to the defense was "two pieces" of Roberson's medical records, which Hargrove presented at the hearing.  (Ex. O, p. 221).  Hargrove informed Roberson of the date of the suppression hearing and advised him he could attend and testify, but recommended against testifying because the only truthful testimony Roberson could give would not be helpful.  (*Id*. at 222, 226).  Roberson, who was out of custody on bond, chose not to attend the hearing.  (*Id*., p. 226).

Based on the record, fairminded jurists can concur in the state court's determination that Roberson's failure to testify at the suppression hearing was the product of his own informed choice, not deficient representation.  Fairminded jurists

can also concur in the state court's conclusions that counsel's overall efforts to suppress Roberson's confession were within the bounds of reasonable professional conduct, and that Roberson was not prejudiced by counsel's performance. Roberson is not entitled to habeas relief on Ground Two.

Ground Three        "Mr. Roberson Was Denied His Right [To] Effective Assistance Of Counsel Under The Sixth Amendment To The United States Constitution When Trial Counsel Failed To Move For The Appointment Of A Traffic Crash Reconstructionist Defense Expert." (Doc. 1, p. 10).

Roberson last claims Attorney Hargrove was ineffective for failing to hire an expert in accident reconstruction to explain that he could not have been the driver because no physical evidence placed him behind the wheel of the car. (Doc. 1, pp. 10-11). The parties agree that Roberson exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding. (Doc. 1, p. 11; Doc. 19, pp. 21-22).

The state circuit court held an evidentiary hearing and denied relief by written order. After correctly identifying *Strickland* as the controlling legal standard, the court denied relief for these reasons:

> The Defendant alleges that counsel was ineffective for failing to move for the appointment of a traffic crash reconstruction expert. *Motion at 14*. The Defendant argues that an accident reconstruction expert could have provided testimony that the Defendant was not driving the vehicle, and that the vehicle was not driven in a reckless manner. *Motion at 14-16*; *Evidentiary Hearing transcript at 11-12*.

First, this Court notes again the testimony provided by counsel refuting the Defendant's claim that he was not the driver of the vehicle. *Evidentiary Hearing transcript at 24-25, 34-35, 43-45.* As such, an accident reconstruction expert would not be able to provide testimony of a falsehood, that is, that the Defendant was not the driver. Second, defense counsel testified that he considered the option of hiring an accident reconstruction expert, but determined that such an approach would have actually been harmful rather than helpful. *Evidentiary Hearing transcript at 33-34, 39.* Third, the Defendant provided no testimony that an expert could have genuinely testified as the Defendant wanted.

Given that defense counsel considered the approach of hiring an accident reconstruction expert, and then determined that a much better strategy would be not to call such an expert, the Defendant's counsel was not deficient in choosing this strategy in the Defendant's case. See Schoenwetter v. State, 46 So. 3d 535, 553 (Fla. 2010); see also Smith v. State, 154 So. 3d 1191 (Fla. 4th DCA 2015). As such, the Defendant's claim that counsel should have sought the testimony of an accident reconstruction expert is without legal merit and must be denied.

(Ex. O, pp. 151-52) (paragraph numbers omitted). The First DCA affirmed without explanation. (Ex. R). The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99.

Applying *Wilson*'s look-through presumption, the state court's rejection of Roberson's claim was based on a reasonable determination of the facts and a reasonable application of *Strickland*. Roberson's contention that he could have found an expert to testify he was not the driver is pure speculation. Roberson

produced no such expert at the Rule 3.850 evidentiary hearing despite the assistance of postconviction counsel. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." (citations omitted)); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (footnotes omitted)).

Additionally, given that Roberson's identity as the driver was not a disputed issue, it was entirely reasonable for Hargrove to decide that reconstruction of the accident would not likely benefit the defense. As Hargrove explained:

> An accident reconstructionist would have given Mr. Jacobsen [the prosecutor] the very thing I didn't want to give him, which is Mr. Roberson was driving, the tires did [not] blow out, he was speeding, and he was ejected from the car. Which would explain the lack of his DNA in the car.
>
> . . . .
>
> Because the issue wasn't was he driving. So I wasn't about to hire a reconstructionist to prove the very thing I wanted to not hand to Mr. Jacobsen on a silver platter. If Mr. Jacobsen wanted to argue that

in closing, fine, there's – it's – the evidence is there, but I wasn't going
to add to his evidence.

(Ex. O, pp. 223-24).

Finally, as the state court emphasized in its overall conclusion, given
Roberson's consistent admission that he was the driver, Hargrove was not ineffective
for failing to present a defense based on what he personally knew to be a lie.  *See
Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1323 (11th Cir. 2002) ("A lawyer
need not embrace his client's fraud."); *Davis v. Singletary*, 119 F.3d 1471, 1475
(11th Cir. 1997) (holding that because defense counsel had "[an] ethical duty not to
present a defense based upon what he personally knew to be a lie", he was not
ineffective for failing to offer expert opinion testimony that he knew was founded
on a falsehood; "The duty to render effective assistance of counsel does not include
the duty to present false or misleading testimony.").  Petitioner is not entitled to
federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States
District Courts provides: "[t]he district court must issue or deny a certificate of
appealability when it enters a final order adverse to the applicant."  If a certificate is
issued, "the court must state the specific issue or issues that satisfy the showing
required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (*quoting Miller-El*, 537 U.S. at 327). The petitioner here cannot make the requisite showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the Madison County Circuit Court's judgment in *State of Florida v. Henry Lee Roberson, Jr.*, Case No. 2011-CF-318, be DENIED.

2.   That the clerk be directed to close the file.

3.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 11th day of February, 2019.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.